IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 17-CV-2441-MSK-STV

KB HOME COLORADO INC.,

    Plaintiff,

v.

PEERLESS INDEMNITY INSURANCE CO.,

    Defendant.

---

**OPINION AND ORDER ON JOINT MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court upon the parties' Joint Motion for Summary Judgment (**## 25**, **26**), the Stipulated Facts (**# 24**), the parties' Responses (**## 27**, **28**), and the parties' Replies (**## 29**, **31**). For the reasons that follow, the Plaintiff's Motion is granted.

## I. JURISDICTION

The Court exercises jurisdiction under 28 U.S.C. § 1332.

## II. BACKGROUND[1]

This is a case in which the Plaintiff, KB Home Colorado Inc., seeks to recover insurance benefits from Defendant Peerless Indemnity Insurance Co. KB Home is a general contractor that built and sold condominium units at the First Creek Condominium development in Denver, Colorado. Beginning in 2002 for the First Creek project, KB Home subcontracted with Metco Landscape Inc. for landscaping work.

---

[1] The parties have submitted this joint motion for summary judgment on stipulated facts. Those that are material are addressed in this summary, or where necessary in the analysis.

1

At the beginning of their contractual relationship, the subcontracts required Metco to maintain commercial general liability (CGL) insurance and to name KB Home as additional insured. Beginning in 2007, the subcontracts created a "Wrap-Up Insurance Program" that "relieved" Metco's obligation to maintain CGL insurance in favor of KB Home for the duration of the Wrap-Up. Participation in the Wrap-Up applied only to CGL insurance and did not affect Metco's obligation to maintain other types of insurance. The 2007 subcontract lasted for a year and a half, the 2008 subcontract lasted for a year, and the 2009 subcontract was executed on December 1, 2009. Though the 2009 subcontract does not specify the end of its term, the Wrap-Up ended on November 30, 2010.

Peerless issued Metco a CGL policy (the Policy) from 2012 to 2015. KB Home was not listed as an insured. In October 26, 2014, during the term of the Policy, the First Creek Owners Association sued KB Home in state court for construction defects. KB Home, in turn, filed third-party claims against its subcontractors, including Metco. KB Home requested that Peerless defend it. Peerless denied the request in August 2015, stating:

> The Commercial General Liability policy is not a substitute for a Performance Bond. It does not guarantee that the insured's products or services will perform in a workmanlike manner, or whether they will perform in any particular manner, or, indeed, that they will perform at all. Accidents involving "bodily injury" or "property damage" to third persons are covered, but not reimbursement for the failure of the insured's own products or services. It is the insured that bears the risk of repairing or replacing allegedly defective products or faulty workmanship, while the insurer bears the risk of damage to the property of others. Damages predicated or premised on the insured's product or its work are not covered by the Policy. . . .
>
> While [the Peerless Policy] included a Blanket Additional Insured Contractors endorsement that provided a basis to extend additional insured status with respect to all persons with whom you have entered into a requirement to provide additional insured status, the contract that KB Home drafted and that Metco executed simply did not contain a requirement for Metco to maintain insurance coverage beyond the period in which Metco was performing work on the project.

(**# 24-13 at 8**, **Ex. M at 518**.) Peerless again denied coverage upon reconsideration for the same reasons.

In this action, KB Home seeks: (1) a declaratory judgment stating that Peerless is obligated to defend KB Home (2) damages for Peerless' breach of the implied covenant of good faith and fair dealing, (3) damages for Peerless' breach of contract based on KB Home's status as a third-party beneficiary of the Policy, (4) damages for a violation of C.R.S. §§ 10-3-1115, 1116 based on unreasonable delay of the claim, and various equitable remedies.

The parties jointly move for summary judgment on a discrete issue — whether Peerless had a duty to defend KB Home in the state court action. They have submitted stipulated facts and exhibits (**# 24**), which the Court considers as the complete record on the issue.

### III. LEGAL STANDARD

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Federal Rule of Civil Procedure 56 provides for the entry of summary judgment if the parties' evidentiary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Here, the parties present a set of stipulated facts, and ask the court to resolve an issue of law. Accordingly, no trial on the issue is required, and the Court will apply the law to the evidence and the stipulations submitted.

### IV. DISCUSSION

Both parties agree that Colorado law governs resolution of this dispute. In interpreting the provisions of the Policy and its exclusions, the Court is mindful that Colorado law requires it to construe them according to their ordinary language under ordinary principles of contract interpretation. *See Ace Am. Ins. Co. v. Dish Network LLC*, 883 F.3d 881, 887 (10th Cir. 2018);

3

*Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003). The Court reads the policy as a whole, does not read its provisions in isolation, and strives to give effect to the intent and reasonable expectations of the parties. *See Cyprus Amax*, 74 P.3d at 299. Whenever possible, such intent is discerned from the policy itself. *See Bengtson v. USAA Property & Cas. Ins.*, 3 P.3d 1233, 1235 (Colo. App. 2000). The Court liberally construes a policy's coverage provisions to provide the broadest possible coverage. *See Fire Ins. Exch. v. Bentley*, 953 P.2d 1297, 1300 (Colo. App. 1998).

"An insurer seeking to avoid its duty to defend an insured bears a heavy burden." To avoid policy coverage, "an insurer must establish that the exemption claimed applies in the particular case, and that the exclusions are not subject to any other reasonable interpretations." The duty to defend exists unless the insurer can establish that the underlying complaint's allegations are "solely and entirely within the exclusions" of the policy. "An insurer is not excused from its duty to defend unless there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured." *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991).

The Court begins with the terms of the Policy. In effect from 2012 to 2015, it generally states that Peerless "will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage", and imposes "the right and duty to defend the insured against any suit seeking those damages." (**# 24-12 at 183**, **Ex. L at 479**.) The Policy also defines who is an insured. "If you are designated in the Declarations as [a]n organization other than a partnership, joint venture or limited liability company, you are an insured." (**# 24-12 at 191**, **Ex. L at 487**.) Metco is listed in the declarations as a corporation, so it is an insured. The Policy also includes as an insured "any person or organization, when you

4

and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy, but only with respect to liability for bodily injury or property damage [c]aused by your work performed for that additional insured that is the subject of the written contract or agreement". (**# 24-12 at 177**, **Ex. L at 473**.) Construing this language in accordance with Colorado law, the Court finds that, because KB Home is not listed, it is deemed to be an insured under the Policy only if: (1) there was an agreement between Metco and KB Home that required Metco to add KB Home as an additional insured on its CGL policies, (2) the subject of the agreement between KB Home and Metco was Metco's work for KB Home, and (3) the underlying state-court action alleges property damage attributable to Metco's work.

The Court next turns to the agreements between Metco and KB Home. Between 2002 and 2007, when construction was ongoing, the contracts between Metco and KB Home required Metco to list KB Home (and its employees) as an additional insured on its CGL policy "for the entire term" of the subcontracts. (**# 24-1 ¶ 10(a)–(b)**, **Ex. A at 8**; **# 24-2 ¶ 10(a)–(b)**, **Ex. B at 52**.) As far as the Court can tell, it did so.

Beginning in 2007, however, the contracts between Metco and KB Home changed. The obligation to maintain KB Home as an additional insured on its CGL policy became "for the entire Term of this Subcontract *and thereafter*". (**# 24-3 ¶ 14**, **Ex. C at 100**; **# 24-4 ¶ 14**, **Ex. D at 132**; **# 24-5 ¶ 14**, **Ex. E at 182** (emphasis added).) The contracts also began to incorporate an exhibit detailing the insurance requirements. Exhibit D required the endorsement in KB Home's favor to "include coverage arising out of both your ongoing and products/completed operations." (**# 24-5 at 35**, **Ex. E at 209**.)[2] These provisions are found in Paragraph 14 of the 2007, 2008,

---

[2] Exhibit D to the contracts is not included in the parties' reproduction of the 2007 contract. Exhibit D to the 2008 contract reads slightly differently: "Such additional insured status should

5

and 2009 contracts. Additionally, the 2007, 2008, and 2009 contracts provided for a Wrap-Up Insurance Program. (**# 24-3 ¶ 14(a)**, **Ex. C at 100**; **#24-4 ¶ 14(a)**, **Ex. D at 132**; **# 24-5 ¶ 14(a)**, **Ex. E at 182**.) The Wrap-Up Program replaced Metco's obligation to maintain CGL insurance in KB Home's favor "for so long as the Wrap-Up remains in effect", as the participation in the Program served the same purpose. (**# 24-3 at 28**, **Ex. C at 120**; **# 24-4 at 37**, **Ex. D at 161**; **# 24-5 at 36**, **Ex. E at 210**.) "At all other times, the provisions of Paragraph 14 will apply." *Id*.

"At all other times" indicates that Paragraph 14 is operative both before and *after* the Wrap-Up Program, and because the Wrap-Up ended on November 30, 2010 (**# 24-5 at 36**, **Ex. E at 210**), the Wrap-Up is really a nonstarter. Rather, Paragraph 14 of the 2009 contract conclusively provides for Metco's insurance obligations. And because Paragraph 14 (with the incorporated Exhibit D) imposes the obligation both for the term "and thereafter", and mandates coverage for "completed operations", the agreement between KB Home and Metco clearly contemplates and requires Metco to designate KB Home as an additional insured for an indefinite period into the future. Consequently, there was a contract in existence during the Policy's term that made KB Home an additional insured.

The parties do not appear to contest that the subject of any of the contracts between KB Home and Metco was Metco's work for KB Home. Thus, the inquiry falls to the allegations in the underlying state-court action. To be sure, a fair amount of the allegations in the complaint

---

be maintained continuously during the term of this Subcontract through no earlier than ten (10) years after Work by Subcontractor on the Project is completed or terminated, whichever is later." (**# 24-4 at 35**, **Ex. D at 159.**) Because the contracts all contain an integration and merger clause affirming that each agreement constitutes "the entire and integrated agreement between the parties" and "supersede[s] all prior negotiations, representations, or agreements, either written or oral", the Court views Exhibit D to the final 2009 contract (quoted above) as the operative provision. (**# 24-3 ¶ 34(e)**, **Ex. C at 112**; **# 24-4 ¶ 34(e)**, **Ex. D at 144**; **# 24-5 ¶ 34(e)**, **Ex. E at 194**.) Importantly, either version of Exhibit D would support the Court's decision.

are not geared toward landscaping work, which is what Metco performed for KB Home. But the complaint does allege that various condominiums suffer from the following contruction defects:

1. Grading and Drainage

    a. Non-compliant grading adjacent to the foundation.

    b. Non-compliant management of concentrated flows.

    c. Drainage bounded by concrete flatwork.

    d. Grading settled, exposing unprotected foundation insulation and causing insulation to pull away from buildings.

(**# 24-10 ¶ 45**, **Ex. J at 272–73**.) Though the Court is strictly confined to the allegations in the complaint under Colorado law, *United Fire & Cas. Co. v. Boulder Plaza Residential LLC*, 633 F.3d 951, 961 (10th Cir. 2011), the Court finds that it is arguable that *grading and drainage* are aspects of landscaping work. The proper course for Peerless here would have been to undertake its duty to defend and, to the extent landscaping work is unrelated to grading, seek a declaration excusing it from KB Home's defense on such grounds.

## V. CONCLUSION

For the foregoing reasons, the parties' Joint Motion for Summary Judgment (**# 26**) is **GRANTED** and the Court finds that Peerless had a duty to defend KB Home based on the Policy. Within 21 days the parties shall jointly advise the Court as to whether a trial is necessary.

Dated this 7th day of March, 2019.

**BY THE COURT:**

_____
Marcia S. Krieger
Senior United States District Judge